UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL STROEHECKER,               :
                                   :CIVIL ACTION NO. 3:17-CV-2022
            Plaintiff,             :
                                   :(JUDGE CONABOY)
            v.                     :
                                   :
NANCY A. BERRYHILL,                :
Acting Commissioner of             :
Social Security,                   :
                                   :
            Defendant.             :
                                   :
_____

## MEMORANDUM

    Pending before the Court is Plaintiff's appeal from the Acting
Commissioner's denial of Disability Insurance Benefits ("DIB")
under Title II of the Social Security Act ("Act") and Supplemental
Security Income ("SSI") under Title XVI of the Act.  (Doc. 1.)
Plaintiff protectively filed applications in March 2014, alleging
disability beginning on September 24, 2013.  (R. 9.)  After
Plaintiff appealed the initial May 8, 2014, denial of the claims, a
hearing was held on March 7, 2016, and Administrative Law Judge
("ALJ") Gerard W. Langan issued his Decision on May 2, 2016,
concluding that Plaintiff had not been under a disability as
defined in the Act from September 24, 2013, through the date of the
decision.  (R. 19.)  Plaintiff requested review of the ALJ's
decision which the Appeals Council denied on September 8, 2017.
(R. 1-5.)  In doing so, the ALJ's decision became the decision of
the Acting Commissioner.  (R. 1.)

    Plaintiff filed this action on November 3, 2017.  (Doc. 1.)

He asserts in his supporting brief that the Acting Commissioner's determination is error for the following reasons: 1) the vocational expert did not provide sufficient evidence of specific jobs Plaintiff could perform; and 2) the ALJ did not properly assess the opinion of Mark Bohn, M.D., a State agency consulting physician. (Doc. 14 at 5.)  For the reasons discussed below, the Court concludes Plaintiff's appeal is properly granted in part.

## I. Background

Plaintiff was born on September 24, 1984, and was twenty-nine years old on the alleged disability onset date of September 24, 2013. (R. 18.)  He has at least a high school education and past relevant work as a landscaper, equipment operator, and master carpenter. (R. 18.)  Plaintiff alleged that his ability to work was limited by widespread pain, swelling of hands and feet, multiple bulging discs, and depression. (R. 154.)

In his supporting brief (Doc. 14), Plaintiff does not provide a factual background with citation to evidence of record.  In the Argument section of his brief related to the consulting physician opinion, Plaintiff provides citation to multiple exhibits consisting of over two hundred pages without specific citation to records contained therein. (Doc. 14 at 7 (citing Exs. 3F, 4F, 5F, 6F, 7F, 8F, and 9F).)  Lacking the presentation of facts by Plaintiff, the Court will set out evidence of record pertinent to Plaintiff's claimed errors in order to provide a framework for

discussion.

Dennis Probst, M.D., of Haven Family Practice was Plaintiff's primary care provider prior to the alleged onset date and continuing through the date of the decision. (R. 224-83, 309-438, 457-78.) The record shows that Dr. Probst generally saw Plaintiff on a monthly basis. (*Id.*)

In early 2013, Dr. Probst assessed thoracic back pain and thoracolumbar pain which he reported as chronic. (R. 263, 264.) He referred Plaintiff to Marek Kurowski, M.D., of Haven Pain Management, and Dr. Kurowski administered back injections in March 2013. (R. 261, 290.) At his March 19, 2013, visit with Dr. Probst, Plaintiff reported that he did not think he would return to Dr. Kurowski because he was running out of money for co-pays. (R. 261.) However, Plaintiff returned for further injections in April. (R. 292.) In May 2013, Dr. Probst noted that Plaintiff planned to see a rheumatologist. (R. 260.)

In June 2013, Plaintiff complained of multiple joint arthralgias and noted that rheumatology wanted him to have more blood work. (R. 258.) Dr. Probst reviewed the recent MRI which showed minor disc bulging at L4-L5 and L5-S1, with no herniations, no compressed nerves, and no stenosis. (R. 257.)

In August 2013, Plaintiff reported that his pain was improving with medication and he rated it as 3/10 with medication and 10/10 without. (R. 253.) Muscolskeletal and neurolgic examinations were

3

normal except for tenderness at multiple bilateral fibromyalgia points. (R. 254.) Dr. Probst's assessment included lumbago and pain in joints, site unspecified. (R. 255.)

Plaintiff again saw Dr. Probst on September 23, 2013, the day before the alleged onset date. (R. 249.) Plaintiff complained of joint and back pain and again was found to have multiple bilateral tender fibromyalgia points as well as an antalgic gait. (R. 250-51.) Musculoskeletal and neurologic exams were otherwise normal. (R. 251.) Dr. Probst's assessment remained the same and he planned to see Plaintiff in another month. (R. 252.) Although Plaintiff reported increased pain beginning in October (increased from 3/10 to 5/10), examination findings and assessments remained consistent through December 2013, at which time it was noted that Plaintiff was going to rheumatology in January. (R. 241-42, 244-45, 247-48.)

On January 20, 2014, Dr. Probst noted that Plaintiff was taking prednisone as prescribed by the rheumatologist. (R. 237.) Physical exam and assessment remained the same as in previous months. (R. 234-35.) In February Plaintiff complained of anxiety/depression but he said it did not interfere with this activities of daily living. (R. 233.) Records are fairly consistent through May 2014 (*see*, *e.g.*, R. 416-17) with an additional indication of a March 9, 2014, hospital emergency department visit for an arm laceration sustained while Plaintiff was splitting wood (R. 212).

On June 20, 2014, Plaintiff complained of swelling of his knees and feet, shoulder pain, and left sided numbness although physical exam remained the same as in previous months. (R. 408, 412.) Dr. Probst noted that Plaintiff was to be seen by rheumatology the following month. (R. 413.)

In addition to multiple tender fibromyalgia points, August 2014 musculoskeletal examination showed limited range of motion (plantar surface tender), tender low back muscles bilaterally, and limited extension and flexion due to pain. (R. 402.) General low back tenderness and generally limited extension and flexion were not recorded on physical exam from September 2014 through February 2015 although tenderness at L4 and thirty degree flexion on active range of motion were specifically noted. (R. 375, 379, 384, 389, 393, 398.) These examinations otherwise revealed no problems. (*Id.*) On October 17, 2014, Dr. Probst noted that rheumatology had diagnosed bilateral sciatica and started Plaintiff on Gabapentin. (R. 394.) Plaintiff was also taking Oxycodone for joint pain. (*Id.*) Plaintiff continued on Gabapentin and Oxycodone through February 2015. (*See* R. 380.)

Although Plaintiff regularly reported arthralgias/joint pain and back pain (*see*, *e.g.*, R. 397, 392, 402), at his February 2015 office visit with Dr. Probst he also reported difficulty walking, hand joint pain, and elbow pain (R. 374). Physical exam showed that Plaintiff had an antalgic gait but no limp and musculoskeletal

and neurologic exams remained the same.  (R. 374-75.)  Plaintiff's
subjective reports and Dr. Probst's examination findings remained
the same in March 2015.  (R. 369-70.)  Dr. Probst noted that
rheumatology had recommended Cymbalta for joint pain but Plaintiff
had taken it for only a few days and felt fatigued.  (R. 371.)
Plaintiff planned to restart the medication.  (*Id.*)

On April 13, 2015, Plaintiff reported to Dr. Probst that he
had injured his back when he was helping a friend move things, but
physical exam remained the same as in previous months.  (R. 362,
265.)  Office visits through June indicate similar exam findings.
(R. 352-61.)

In July 2015, Dr. Probst's neurologic exam continued to
indicate no limp, no assistive devices, and antalgic gait, but he
also noted that Plaintiff's left knee was wrapped in an ace
bandage, he had diminished ankle and knee reflexes bilaterally, and
positive supine straight leg raising test.  (R. 350.)
Musculoskeletal exam showed tenderness of the paraspinal region at
L4, active range of motion extension of ten degrees, and passive
range of motion extension of ten degrees and flexion of thirty
degrees.  (*Id.*)  Knee examination showed limited range of motion
and positive McMurray's test.  (R. 351.)  Dr. Probst planned
another rheumatology referral.  (*Id.*)

Dr. Probst's Assessment included rheumatoid arthritis for the
first time on August 11, 2015, at which time he noted Plaintiff had

a rheumatology appointment in September.  (R. 347.)  He also noted that Plaintiff used crutches as needed.  (*Id.*)

Plaintiff had a rheumatology consultation with Brian P. Opperman, M.D., on September 29, 2015.  (R. 445-47.)  Dr. Opperman noted that Plaintiff said he was not working as a contractor because of arthritis pain.  (R. 445.)  Plaintiff reported Gapapentin provided some relief for sciatic pain, he had received injections but had to stop because of insurance issues which had since been resolved, he had swelling in both knees and hands, he had an ankle ganglion cyst, and Dr. Probst thought he might have rheumatoid arthritis.  (*Id.*)  In addition to joint pain and swelling and back pain, Plaintiff reported morning stiffness lasting two hours, a pain level of 8/10, and numbness mainly on his left side.  (R. 445-46.)  Muscoloskeletal ROS noted "Job status: ? disabled."  (R. 445.)  Physical exam showed that Plaintiff was in moderate distress from pain, he was very tender to light touch around both knees and over the lumbar back, and he had tenderness and reduced grip in both hands.  (R. 447.)  Dr. Opperman assessed degenerative disc disease in the lumbar region, left side sciatica, and chronic musculoskeletal pain.  (R. 447.)  Dr. Opperman did not think Plaintiff had rheumatoid arthritis but, due to Plaintiff's pain presentation, he wondered if Plaintiff may have "an enhanced pain syndrome such as fibromyalgia with known OA."  (R. 447.)  He planned to get additional labs and possibly change medications

after review.  (*Id.*)

At monthly follow up visits with Dr. Probst in October and November, Plaintiff's complaints and the physcial examination findings were similar to those previously recorded.  (*See* R. 329-30, 334-35.)  In December 2015 Plaintiff reported abdominal pain and frequent diarrhea in addition to his chronic complaints.  (R. 325.)  Dr. Probst planned a gastroenterology referral.  (R. 326.)

Plaintiff saw Dr. Opperman again on January 12, 2016.  (R. 439-41.)  Plaintiff continued to report pain.  (R. 439.)  His medications included Oxycontin, Cymbalta, Zanaflex, and Gabapentin. (*Id.*)  He felt the Gabapentin and Cymbalta seemed to help some, especially with his hips.  (*Id.*)  Plaintiff reported numbness in his feet and trouble with pain in his hands--it was hard to grip, he dropped objects, and he had tingling in his fingertips, as well as swelling of his right hand and fingers.  (*Id.*)  Muscoloskeletal ROS again noted "Job status: ? disabled."  (R. 439.) Musculoskeletal exam indicated "? Mild dactylitis right 5th finger," very tender at right 5th PCP and MCP, no other sites of synovitis were noted, diffuse tenderness over low back, and crepitus of both knees with tenderness.  (R. 440.)  Dr. Opperman assessed chronic musculoskeletal pain (primary encounter diagnosis), lumbar degenerative disc disease, elevated C-reactive protein (CRP), and inflammatory polyarthritis (HCC).  Given possible IBD and CRP, Dr. Opperman wondered if Pliantiff had seronegative arthritis and he

planned to do a trial of medrol and guage the response.  (R. 441.)

Early 2016 follow up with Dr. Probst indicates that complaints and examination findings remained essentially the same. (*See* R. 459-73.)  As of March 1, 2016, Plaintiff had not scheduled a GI appointment and Dr. Probst continued to advise him to do so. (R. 463.)

## C.  *Hearing Testimony*

At the ALJ hearing, Plaintiff testified that he was unable to work because of problems with his back, spine and hips, and he could not hold anything.  (R. 56.)  He said he could not stand or sit for more than fifteen minutes, he could not walk more than a block on a good day, and he could lift five pounds but could not pick up anything off the floor.  (R. 56-57.)  He was using crutches at the hearing and said he had been using them off and on for two years.  (R. 57.)  Plaintiff stated that his medications helped some but caused side effects including drowsiness, fatigue, and blurred vision.  (R. 58.)  He also testified that he did no household activities and primarily spent his days on the couch watching TV and napping.  (R. 59-62.)

Linda Hartz, Plaintiff's fiancé, also testified at the hearing.  (R. 64.)  She said they had been together for eleven years and he was very active when they were first together but he had multiple problems and no activities since September 2013.  (R. 64-66.)

Vocational Expert ("VE") Gerald W. Keating also testified. (R. 67-78.) ALJ Langan asked the VE to consider a hypothetical individual of Plaintiff's age, education, and work experience, who was limited to light work and who had to avoid unprotected heights and dangerous machinery, could never climb ropes, ladders, or scaffolds, could occasionally climb ramps and stairs, and could have no more than occasional exposure to cold temperatures, wetness, and vibration. (R. 70.) The VE testified that the individual would not be able to perform Plaintiff's past relevant work but would be able to perform jobs that existed in significant numbers in the national economy. (*Id.*) The VE's testimony was similar when ALJ Langan added that the hypothetical individual would require the ability to alternate between sitting and standing every thirty minutes in order to change positions. (R. 71.) After ALJ Langan reduced the exertional demands from light to sedentary and retained the other previously identified limitations, he asked the VE to identify representative samples of occupations at the sedentary level which the hypothetical individual could perform. (R. 72.) The VE testified that the hypothetical individual would be able to perform the jobs of assembler of small parts, switchboard operator, and telephone solicitor which all existed in significant numbers in the national economy. (R. 73.)

**D.    *ALJ Decision***

In his May 2, 2016, Decision, ALJ Langan found that Plaintiff

had the following severe impairments: fibromyalgia, degenerative disc disease lumbar spine; and rheumatoid arthritis involving multiple joints including both knees. (R. 11.) ALJ Langan then concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (R. 12.) He assessed Plaintiff to have the residual functional capacity ("RFC") to perform sedentary work

> except is able to lift and carry 10 pounds occasionally and 2-3 pounds frequently. He must avoid unprotected heights and dangerous machinery. He can never climb ropes, ladders or scaffolds. He can occasionally climb ramps and stairs. He is allowed only occasional exposure to extreme cold temperatures, wetness and vibration. He requires a sit/stand option every 30 minutes.

(R. 13.) On the basis of this RFC, ALJ Langan determined Plaintiff was not able to perform his past relevant work but could perform jobs that existed in significant numbers in the national economy. (R. 18.) Therefore, the ALJ found that Plaintiff had not been disabled, as defined in the Act, during the relevant time period. (R. 19.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1] It is necessary for the

---

[1] "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C.

11

Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 888-89 (1990).

If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record. 20 C.F.R. § 404.1520(e); 416.920(e). The residual functional capacity assessment is then used at the

_____

§ 423(d)(1)(A). The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

fourth and fifth steps of the evaluation process.  *Id.*

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

As set out above, the instant decision was decided at step five of the sequential evaluation process when the ALJ found that jobs existed in significant numbers in the national economy which Plaintiff could perform.  (R. 19.)

### III. Standard of Review

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a
> talismanic or self-executing formula for

13

adjudication; rather, our decisions make
clear that determination of the existence *vel
non* of substantial evidence is *not* merely a
quantitative exercise.  A single piece of
evidence will not satisfy the substantiality
test if the Secretary ignores, or fails to
resolve, a conflict created by countervailing
evidence.  Nor is evidence substantial if it
is overwhelmed by other evidence--
particularly certain types of evidence (e.g.,
that offered by treating physicians)--or if
it really constitutes not evidence but mere
conclusion.  *See* [*Cotter*, 642 F.2d] at 706
("'Substantial evidence' can only be
considered as supporting evidence in
relationship to all the other evidence in the
record.") (footnote omitted).  The search for
substantial evidence is thus a qualitative
exercise without which our review of social
security disability cases ceases to be merely
deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the ALJ to

analyze all probative evidence and set out the reasons for his

decision.  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d

Cir. 2000) (citations omitted).  If he has not done so and has not

sufficiently explained the weight given to all probative exhibits,

"to say that [the] decision is supported by substantial evidence

approaches an abdication of the court's duty to scrutinize the

record as a whole to determine whether the conclusions reached are

rational."  *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir.

1979).  In *Cotter*, the Circuit Court clarified that the ALJ must

not only state the evidence considered which supports the result

but also indicate what evidence was rejected: "Since it is apparent

14

that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .")). "However, even if the Secretary's factual findings are supported by substantial evidence, [a court] may review whether the Secretary, in making his findings, applied the correct legal standards to the facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983) (internal quotation omitted). Where a claimed error would not affect the outcome of a case, remand is not required. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Finally, an ALJ's decision can only be reviewed by a court based on the evidence that was before the ALJ at the time he or she made his or her decision. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

As set out above, Plaintiff asserts the Acting Commissioner's determination should be reversed or remanded for the following reasons: 1) the vocational expert did not provide sufficient evidence of specific jobs Plaintiff could perform; and 2) the ALJ did not properly assess the opinion of Mark Bohn, M.D., a State agency consulting physician. (Doc. 14 at 5.)

### A. *Step Five Determination*

Plaintiff asserts that the vocational expert did not provide evidence of sufficient jobs that existed in the national economy. (Doc. 14 at 6.) Defendant responds that substantial evidence supports the ALJ's determination that there are significant jobs Plaintiff could perform within his RFC assessment. (Doc. 15 at 19.) The Court concludes the record does not show that substantial evidence supports the ALJ's conclusion that sufficient jobs exist in the national economy which Plaintiff could perform.

Plaintiff's assertion points to error at step five of the evaluation process. As set out abovethe ALJ determines at step five whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work. 20 C.F.R. §§ 404.1520(c)(2), 416.920(c)(2). It is the Commissioner's burden to show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason*, 993 F.2d at

1064.  As Defendant notes, "[a]n ALJ can satisfy this burden by relying on VE testimony."  (Doc. 15 at 9 (citingg 20 C.F.R. §§ 404.1566(e), 416.966(e)).)  As further noted, "[a]n ALJ can rely on VE testimony where . . . the work-related limitations in the hypothetical question posed to the VE accurately reflect the claimant's limitations."  (*Id.* (citing *Rutherford*, 399 F.3d at 553-54).)

Without citation to the record or support, Plaintiff mounts a one-sentence criticism to each job identified by the VE, i.e., assembler of small parts, switchboard operator, and telephone solicitor.  (Doc. 14 at 6; R. 19.)  Plaintiff then concludes that "[i]nsufficient job categories and numbers of jobs were offered to support the findings . . . that jobs exist in the state and national economy which would be available" to him.  (*Id.*)

This type of cryptic argument would generally not satisfy a plaintiff's burden of showing error.  "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shineski v. Sanders*, 556 U.S. 396, 409 (1969); *Woodson v. Comm'r of Social Security*, 661 F. App'x 762, 766 (3d Cir. 2016) (citing *Shineski*, 556 U.S. at 409) (a plaintiff must point to specific evidence that demonstrates his claimed error caused harm); *Holloman v. Comm'r of Social Security*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shineski*, 556 U.S. At 409) (a plaintiff must show how the claimed error made a difference beyond

a mere assertion that it did so).  However, in this case, the Court
cannot ignore a fundamental problem in the ALJ's step five
assessment in that his reliance on the VE testimony was flawed
because he did not present all work-related limitations in the
hypothetical posed to the VE.

ALJ Langan limited Plaintiff to sedentary work as defined in
20 C.F.R. §§ 404.1567(a) and 416.967(a) *except he is able to lift
and carry 10 pounds occasionally and 2-3 pounds frequently.*"  (R.
13 (emphasis added)).  The regulations define sedentary work as
that which "involves lifting no more than 10 pounds at a time and
occasionally lifting or carrying articles like docket files,
ledgers, and small tools."  20 C.F.R. §§ 404.1567(a) and
416.967(a).  "Occasionally" means occurring from very little to up
to one-third of the time, and "frequently" means occurring from
one-third to two-thirds of the time. SSR 83-10, 1983 WL 31251, at
*5-6.  The regulations and relevant ruling do not qualify lifting
of "no more than ten pounds" to "occasionally" and do not discuss a
claimant's ability to "frequently" lift a lower weight as ALJ
Langan did here.  20 C.F.R. §§ 404.1567(a) and 416.967(a); SSR 83-
10, 1983 WL 31251.

Contrary to Defendant's assertion that the hypothetical posed
to the VE accurately reflected Plaintiff's limitations (Doc. 15 at
9), a careful review of ALJ Langan's hypothetical questions to the
VE and the VE responses shows that the hypotheticals did not

18

include all weight limitations assessed. (*See* R. 70-75.) Although one hypothetical posed to the VE limited the individual to sedentary work (R. 72), limiting the individual to sedentary work did not reflect ALJ Langan's limitation of Plaintiff to lifting and carrying 10 pounds occasionally and 2-3 pounds frequently. (R. 13.) This review of the record and relevant provisions indicates that ALJ Langan's additional weight restrictions present limitations he attributed to Plaintiff but did not present to the VE. Thus, the court cannot agree with Defendant that substantial evidence supports the step five decision because the hypothetical posed to the VE accurately reflected Plaintiff's limitations and the ALJ was therefore entitled to rely on the VE's testimony (Doc. 15 at 9-10). Rather, the Court concludes that the record does not support the ALJ's reliance on the VE's testimony. As ALJ Langan provided no other support for his finding that a claimant who could "lift and carry 10 pounds occasionally and 2-3 pounds frequently" (R. 13) could perform the jobs identified by the VE and specifically relied on the VE testimony to support his step five determination (*see* R. 19), the Court cannot conclude that his step five determination is supported by substantial evidence. Therefore, this matter must be remanded for further consideration.

**B.    *Consulting Physician Opinion***

Plaintiff alleges that the ALJ committed error in accepting the opinion of consulting physician Mark Bohn, M.D., because Dr.

19

Bohn did not see or treat Plaintiff and he did not review the
majority of medical records submitted. (Doc. 14 at 7.) Defendant
responds that substantial evidence supports ALJ Langan's evaluation
of medical opinion evidence. (Doc. 15 at 15.) The Court concludes
Plaintiff has not satisfied his burden of showing that the claimed
error is cause for reversal or remand.

The Third Circuit Court of Appeals has made clear that "State
agent opinions merit significant consideration." *Chandler v.
Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing SSR
96-6p ("Because State agency medical and psychological consultants
. . . are experts in the Social Security disability programs, . . .
20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to
consider their findings of fact about the nature and severity of an
individual's impairment(s). . . ." (alterations in *Chandler*)).
*Chandler* explained that

> because state agency review precedes ALJ
> review, there is always some time lapse
> between the consultant's report and the ALJ
> hearing and decision. The Social Security
> regulations impose no limit on how much time
> may pass between a report and the ALJ's
> decision in reliance on it. Only where
> "additional medical evidence is received that
> in the opinion of the [ALJ] . . . may change
> the State agency medical . . . consultant's
> finding[] . . . is an update to the report
> required." SSR 96-6p (July 2, 1996).

667 F.3d at 361. A substantial change in a claimant's medical
condition following a consultative opinion has been addressed from
a different perspective where courts have considered evidence of a

deteriorating condition to be a relevant factor in reviewing the weight accorded an opinion which predates such evidence. *See*, *e.g.*, *Grimes v. Colvin*, Civ. A. No. 15-113E, 2016 WL 246963, at *2 (W.D. Pa. Jan. 21, 2016). *Grimes* noted that the date of a non-examining state agency opinion (up to a few years old), in and of itself, is not an issue. *Id.* (citing *Chandler*, 667 F.3d at 361). However, where evidence can be read to indicate that a plaintiff's condition deteriorated after the state agency reviewer issued his opinion, *Grimes* considered the ALJ's reliance on that opinion "troubling." *Id.*

After stating that Dr. Bohn limited Plaintiff to less than a full range of light work, ALJ Langan noted the finding was "generally credible" but explained that he "has given credence based on the entire record to some of the claimant's complaints and therefore reduced functional capacity to sedentary with the ability to alternate between sitting and standing every 30 minutes." (R. 17.) Importantly, ALJ Langan afforded "limited weight" to Dr. Bohn's opinion and stated that "it has been the Commissioner's longstanding policy that an ALJ may reach an RFC determination without outside medical review of each fact incorporated into the decision." (R. 18.)

Given ALJ Langan's assessment of the opinion and Plaintiff's presentation of legal authority without application to the facts of this case (*see* Doc. 14 at 7-10), Plaintiff has not shown how the

claimed error would be harmful.  As set out above, "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *S hineski*, 556 U.S. at 409. A plaintiff must show how the claimed error made a difference beyond a mere assertion that it did so, *Holloman*, 639 F. App'x at 814--the plaintiff must point to specific evidence that demonstrates his claimed error caused harm, *Woodson*, 661 F. App'x at 766.  ALJ Langan's explanation of his consideration of Dr. Bohn's opinion arguably shows that, *even if* Dr. Bohn's opinion should not have been deemed "generally credible" because of his review of limited evidence, the fact that the ALJ considered the entire record and assigned the opinion limited weight indicates that the error would be harmless.  Because Plaintiff presents the issue in conclusory terms and has not attempted to satisfy his burden of showing error on the basis alleged, the claimed error is not cause for reversal or remand.

## V. Conclusion

For the reasons discussed above, the Court concludes Plaintiff's appeal of the Acting Commissioner's denial of benefits is properly granted in part.  This matter is remanded to the Acting Commissioner for further consideration of the step five determination that, based on the RFC assessed by the ALJ, Plaintiff was capable of performing jobs that existed in significant numbers in the national economy.  An appropriate Order is filed

22

simultaneously with this Memorandum.

                                                S/Richard P. Conaboy
                                                RICHARD P. CONABOY
                                                United States District Judge

DATED: July 11, 2018